**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KAITLIN D.G.,**[1] | ) | |
| | ) | **No. 24 CV 2069** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **FRANK BISIGNANO, Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | **October 23, 2026** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION and ORDER

Caleb G., who has a history of substance abuse and is transgender, seeks supplemental security income ("SSI") asserting that he is disabled by various mental health conditions. He brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for benefits. For the following reasons, Caleb's remand request is denied:

## Procedural History

Caleb filed an SSI application in January 2020 claiming disability onset on May 13, 1994. (Administrative Record ("A.R.") 16.) His claim was denied initially and upon reconsideration at the administrative level. (Id.) He then was granted a hearing before an Administrative Law Judge ("ALJ"), and Caleb and a vocational expert ("VE") testified. (Id. at 37-64.) The ALJ determined in March 2021 that Caleb

---

[1] Caleb's legal name is Kaitlin, but the record reflects that he goes by Caleb and uses he/him pronouns, so this court does too. Pursuant to Internal Operating Procedure 22, the court uses Caleb's first name and last initial in this opinion to protect his privacy to the extent possible.

would be disabled considering his substance abuse because it renders his condition listings-level severe, that he is not disabled for purposes of his benefit claim because substance abuse is material to his disability, and that his residual functional capacity ("RFC") assuming he is not using would allow him to perform jobs available in significant numbers in the U.S. economy. (Id. at 16-29.) The Appeals Council denied Caleb's request for review. (Id. at 1-6.) Caleb then sought judicial review. (Id. at 884-86); *Kaitlin G. v. Kijakazi*, No. 21 CV 5866 (N.D. Ill.) (Kendall, J.). The court affirmed the ALJ's listings-level finding but remanded the case for further consideration because the ALJ failed to connect the evidence to Caleb's RFC absent substance abuse. (See generally A.R. 894-906.)

Caleb appeared with his attorney at a second hearing in November 2023, amended his disability onset date from May 13, 1994, to January 2, 2020, and provided testimony.[2] (Id. at 837-54.) The ALJ assessed the same RFC on remand but provided additional explanation, again concluding that absent substance abuse Caleb is not disabled. (Id. at 806-26.) Caleb now seeks judicial review of that decision, and the parties consented to this court's jurisdiction. 28 U.S.C. § 636(c); (R. 6).

**Analysis**

Caleb argues that on remand the ALJ failed to: (1) explain how he has the RFC to sustain the on-task and attendance requirements for full-time work; (2) disentangle his substance abuse from his mental impairments and explain why some

---

[2] Caleb filed a second SSI application in June 2022, which the Appeals Council consolidated with the application at issue here. (A.R. 912.)

of his subjective allegations were inconsistent with the evidence; and (3) support the assessment of his treating provider's opinion with substantial evidence. (See generally R. 11, Pl.'s Mem.) The court disagrees that the ALJ erred.

**A. Symptom Assessment**

Caleb's contention that the ALJ failed to disentangle his substance abuse from his mental impairments and explain why some of his allegations were inconsistent with the evidence is fundamentally a complaint about the ALJ's symptom assessment. The court addresses this complaint first because any error here would require a new RFC assessment. An ALJ's symptom evaluation is entitled to great deference and may only be reversed where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). But the ALJ may not disregard subjective complaints "solely because they are not substantiated by objective medical evidence," *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015), and must consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors, SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017). That said, the court will not overturn a symptom evaluation that is logically grounded in specific findings and evidence, as the ALJ's is here. *See Murphy*, 759 F.3d at 815.

At the outset, Caleb accuses the ALJ of ignoring the previous remand directives on this and other points, suggesting that they called for a particular result. (R. 11, Pl.'s Mem. at 13-14 (arguing ALJ "ignored" court's "explicit admonition" not to rely on state agency consultant opinions and insinuating court found it impossible for Caleb to sustain full-time work given his allegations).) But the previous remand

order simply directed the ALJ to explain his conclusions regarding Caleb's allegations. (See A.R. 904-06); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022) (holding ALJ did not fail to follow remand order that merely "directed the ALJ to further evaluate [claimant's] subjective allegations and provide rationales to support its conclusions, which the ALJ did"). The ALJ did so here.

To be sure, Caleb argues that the ALJ improperly "canceled out" his "documented deficits" because of unremarkable mental status examinations ("MSEs"), some of which occurred during "dental, endocrinological, or other" appointments when his mental impairments were not the focus. (R. 11, Pl.'s Mem. at 13-15.) Caleb relies on the Seventh Circuit's warning in *Gerstner v. Berryhill*, 879 F.3d 257, 261-62 (7th Cir. 2018), that MSEs merely describe how a person is doing "on the days of h[is] appointments" and are not a "general assessment." (Id.) But this line of authority does not render MSEs obsolete because they are among the objective evidence ALJs can use to assess a claimant's allegations. *See Moyer v. O'Malley*, No. 23-2599, 2024 WL 1411565, at *4 (7th Cir. April 2, 2024) (noting applicable regulations "specifically permit" reliance on MSEs in disability determination); *Chambers v. Saul*, 861 Fed. Appx. 95, 100-01 (7th Cir. 2021) (holding ALJ "appropriately considered" objective evidence including "mostly unremarkable" MSEs). And although some of the MSEs at issue occurred during visits focused on physical health concerns, that fact does not render the MSEs irrelevant. *See Rachel S. v. Saul*, No. 19 CV 8465, 2021 WL 2939975, at *4 (N.D. Ill. July 13, 2021) (holding ALJ did not err by giving more weight to normal MSEs occurring

during asthma-related visits than to those occurring during psychological examinations).

Regardless, Caleb does not claim that the ALJ missed favorable evidence in those MSEs or considered a lack of objective evidence alone. *Cf. Doris W. v. Saul*, No. 19 CV 67, 2020 WL 4547881, at *3 (N.D. Ill. Aug. 6, 2020) (holding ALJ impermissibly "cherry-pick[ed]" MSE contents supporting his conclusion while ignoring contrary evidence in the same); *Bonnie F. v. Saul*, No. 18 CV 50417, 2020 WL 3414948, at *4 (N.D. Ill. June 22, 2020) (holding that an ALJ "cannot discount [a claimant's] symptoms *solely* because there is no objective evidence" (emphasis in original)). Nor could he, as the ALJ also considered Caleb's treatment, inconsistent complaints to providers, and reports of "no significant levels of depression or anxiety." (A.R. 824); *Murphy v. Berryhill*, 727 Fed. Appx. 202, 207 (7th Cir. 2018) (holding ALJ's adverse symptom assessment was properly based on "incongruity" between "relatively modest symptoms" reported to doctors and "more severe symptoms" reported to the ALJ).

The ALJ also considered Caleb's daily living activities, including his ability to care for pets, shop in stores, regularly attend medical appointments, engage in part-time and volunteer work, and live independently for five years. (A.R. 823-24.) While Caleb says it was "illogical[]" and "contrary to Seventh Circuit law" for the ALJ to discredit Caleb's symptom allegations on this basis, (R. 11, Pl.'s Mem. at 14), he is wrong, *see* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017) (listing daily living activities as among factors to be considered in examining subjective complaints). And

the ALJ did not equate Caleb's activities with an ability to work full time, as he suggests. (R. 11, Pl.'s Mem. at 14-15.) Rather, the ALJ examined Caleb's activities alongside the extreme self-management and social interaction limitations Caleb claims to need based on his fear of physical attack because he is transgender and appropriately determined that the "very substantial[]" social interaction limits the ALJ assessed were sufficient—that is, limiting him to occasional interaction with co-workers and supervisors and no work-related interactions with the public, among other restrictions. (A.R. 823-24.) In so concluding, the ALJ noted Caleb's part-time employment and volunteer work bussing restaurant tables, volunteering at a food pantry, and working as a liquor store cashier involved "greater than occasional" public interaction. (Id. at 824 (also noting that Caleb's cashier job terminated because of COVID-19, not because of anxiety or panic attacks).) The ALJ further reasoned that Caleb's ability to live independently, care for pets, and attend appointments undermined his claimed inability to adapt and manage himself. (Id. at 815, 823-24.) This was not error, and Caleb's arguments to the contrary amount to a request to reweigh the evidence, which the court cannot do. *See Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021).

Still, Caleb argues that the ALJ failed to "disentangle" the effects of his substance abuse from those of his mental impairments and points out that the government did not respond to this argument. (R. 11, Pl.'s Mem. at 13-15; R. 18, Pl.'s Reply at 5.) But the court found during the first appeal that the ALJ had adequately supported his determination that Caleb's substance abuse was correlated with

increased self-isolation, panic and anxiety attacks, and self-management challenges. (A.R. 902-03 (citing id. at 20-23).) And the ALJ on remand noted that Caleb's work activity declined with drug use, and he sought out and engaged in work activity once sober. (Id. at 823.) In any event, neither the court nor the Appeals Council took issue with the ALJ's original conclusion that Caleb's substance abuse was a contributing factor material to the determination of disability, (id. at 29, 901-03, 912), a conclusion the ALJ reached anew on remand, (id. at 826). Caleb does not explain how requiring the ALJ to do more to separate Caleb's drug use from the symptoms of his mental impairments would further his claim. Even if Caleb had consistently abused drugs and/or alcohol throughout the relevant period, the ALJ found that Caleb exaggerated his limitations. In short, Caleb may prefer that the ALJ weigh the evidence differently, but this court cannot direct his desired result. *See Deborah M.*, 994 F.3d at 788 (holding that the court will not reweigh the evidence). Because the ALJ's subjective symptom assessment was adequately supported and not "patently wrong," remand is not proper on this ground.

**B. Opinion Evidence**

The ALJ's evaluation of treating psychiatric nurse practitioner Diana Tomlianovich's November 30, 2023 opinion also withstands scrutiny. An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must assess the persuasiveness of all medical opinions by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c,

416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to assess how the opinion is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how he considered the source's specializations and relationship with the claimant and any other factors tending to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

Tomlianovich opined on November 30, 2023, that: (1) Caleb's illnesses markedly restrict his daily activities, socialization, and ability to sustain concentration and attention "resulting in frequent failure to complete tasks"; (2) "sustained work wears on [Caleb] mentally"; (3) Caleb is unable to "function in a competitive work setting . . . on an eight-hour per day, five days per week basis"; and (4) encounters with others, stress, and travel/leaving home increase Caleb's anxiety, and she does not "feel" Caleb's symptoms are "related to substance abuse." (A.R. 1415-16.) The ALJ found her second and third opinions "neither valuable nor persuasive" because they are akin to "statement[s] that the claimant is disabled," a determination reserved for the Commissioner. (Id. at 822 (citing id. at 1415-16).) And the ALJ found Tomlianovich's first opinion at odds with her own treatment notes, which generally reflect unremarkable MSEs and are "consistent with moderate rather than marked limitations if substance abuse was stopped." (Id. at 813.) The

ALJ further noted that Tomlianovich's opinions were "primarily" based on Caleb's self-reports. (Id.)

Caleb declares in conclusory fashion that the ALJ "failed to adequately support his rejection" of Tomlianovich's opinions. (R. 11, Pl.'s Mem. at 15.) He says the ALJ "falsely asserted" that Tomlianovich's treatment notes "show largely unremarkable findings," and that there are "far more 'remarkable' ones," including by "other mental health providers." (Id. at 16.) Caleb cites only a few treatment records for support, however, and none reflect Tomlianovich's notes or are particularly remarkable. (See id. (citing A.R. 1233, 1270, 1280, 1291 and 1298 (June 2021-August 2022 treatment notes with nurse practitioner Alicia Yaeger)).) The ALJ did not err by pointing out the contradiction between Tomlianovich's opinions endorsing severe restrictions and treatment notes suggesting otherwise. *See Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023) (holding ALJ properly discounted provider's opinion as inconsistent with treatment notes).

Caleb also complains that the ALJ considered Tomlianovich's reliance on his subjective complaints. (R. 11, Pl.'s Mem. at 16.) But an ALJ may discount an opinion on this basis, too. *See Prill v. Kijakazi*, 23 F.4th 738, 751 (7th Cir. 2022) (noting that "when a physician's opinion is based primarily upon a patient's subjective complaints, the ALJ may discount that opinion").

Finally, the court agrees with the government that in any case Caleb's argument as to Tomlianovich is "perfunctory and undeveloped" and therefore risks waiver, even had Caleb identified an error. (R. 17, Govt.'s Mem. at 14); *Rock Hemp*

*Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) ("Perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.") Indeed, Caleb cites no authority on the matter, says nothing whatsoever about Tomlianovich's opinion in his reply brief, and fails to respond to the government's counterarguments concerning the same. (See generally R. 11, Pl.'s Mem.; R. 18, Pl.'s Reply.) Accordingly, he seems to have abandoned this issue altogether. *See Kyles v. Beaugard*, No. 15 CV 8895, 2023 WL 5277882, at *21 (N.D. Ill. Aug. 16, 2023) (holding that movant may waive an argument on reply "by failing to respond to the opposing party's counterarguments or new arguments raised in the response brief" (collecting cases)).

**C. RFC Assessment**

Caleb also complains about the ALJ's RFC assessment. The RFC measures the tasks a person can perform given his limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). When developing the RFC, the ALJ must incorporate all of a claimant's limitations, including those that are not severe, and may not dismiss a line of evidence that is contrary to the ruling. *Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether the ALJ considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), and provide a "logical bridge" between the evidence and conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). But the ALJ is not required to address every piece of evidence, *Knox v. Astrue*, 327 Fed. Appx. 652, 657-58 (7th Cir. 2009), and need only "minimally

articulate" his reasoning to build the requisite logical bridge, *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004). The ALJ satisfied that standard here.

The ALJ reached the same RFC on remand as he had initially, concluding that if Caleb is not abusing substances, he can perform work at all exertional levels with certain non-exertional limitations. (A.R. 815.) Caleb says the ALJ "fail[ed] to properly accommodate" his moderate limitations in the four paragraph B criteria and did not explain what "materially changed" about Caleb's functional capacity when sober or how he could work "five days per week, eight hours per day" despite needing to isolate, having concentration issues, and experiencing "regular panic attacks around others." (R. 11, Pl.'s Mem. at 11-12.)

Yet in almost the same breath, Caleb acknowledges that the ALJ did explain the RFC and examined evidence both in favor of and against his claim in assessing the same. (Id. at 13.) For instance, Caleb notes that the ALJ considered that Caleb initiated counseling in January 2020, underwent a psychiatric hospitalization in July 2020, and had treatment records from 2021 to 2023 reflecting abnormal psychiatric findings. (Id. (citing A.R. 823).) The ALJ also explained, as Caleb acknowledges, that Caleb's recent treatment records reflect reports of "difficulties meeting people like him," "burnout due to work," and struggles to "handle 'large' social situations." (Id.; see also A.R. 824.) However, none of these facts require accommodation beyond the ALJ's already restrictive RFC. As an initial matter, just because Caleb sought counseling does not mean he is incapable of working. And Caleb misrepresents that he was "post-substance abuse" at the time of his July 2020 hospitalization. (Id.) In

fact, and as the ALJ notes, he apparently was under the influence of PCP and admitted to using marijuana upon admission, (see A.R. 818 (citing id. at 749)), meaning this hospitalization bears little relevance to Caleb's RFC while sober. Furthermore, and as already discussed, the ALJ weighed both the abnormal findings in Caleb's treatment notes and the allegations of social and work struggles against the record as a whole, including Caleb's largely unremarkable MSEs, inconsistent complaints to providers, daily living activities, and part-time work. The ALJ also thoroughly discussed the opinion evidence, finding the opinions of state agency consultant Dr. Richard Hamersma "particularly" persuasive, but assessing greater limitations to accommodate Caleb's alleged social interaction difficulties. (Id. at 822-23.)

Moreover, the additional restrictions Caleb seeks are related to off-task and attendance concerns, (R. 11, Pl.'s Mem. at 10-13), and the ALJ addressed and rejected them as unnecessary, (A.R. 823-24 (noting Caleb's claim that he would be absent three days per month and/or off-task 25% of a workday but finding his reports to providers, MSEs, treatment notes, and daily living activities were inconsistent with the same)). This was not error. Finally, in a last-ditch effort Caleb falls back on the familiar argument that an ALJ may not rely on "catch-all terms" like "simple, repetitive tasks" to accommodate concentration, persistence, and pace ("CPP") limitations without explaining how such terms do so. (R. 11, Pl.'s Mem. at 12.) Yet he neglects to mention that the limitations assessed here go beyond such terms and again does not suggest others beyond the off-task and attendance limitations the ALJ

reasonably rejected. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding any error in RFC harmless where "[i]t is unclear what kinds of work restrictions might address [claimant's] limitations" in CPP "because he hypothesizes none" and presents "no evidence that [CPP] deficits keep him from performing simple, routine, and repetitive tasks"). The ALJ's RFC assessment has the support of substantial evidence.

## Conclusion

For the foregoing reasons, Caleb's remand request is denied, and the Commissioner's final decision is affirmed.

**ENTER:**

**Young B. Kim**
**United States Magistrate Judge**